IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| MATTERN & ASSOCIATES, LLC, | : |
| Plaintiff, | : |
| | : CIVIL ACTION NO.: 06-cv-36 (KAJ) |
| vs. | : |
| | : |
| JOHN SEIDEL, | : **ANSWER TO FIRST AMENDED** |
| | : **COMPLAINT, AMENDED** |
| Defendant-Third Party | : **COUNTERCLAIM and AMENDED** |
| Plaintiff, | : **THIRD-PARTY COMPLAINT WITH** |
| | : **JURY DEMAND** |
| vs. | : |
| | : |
| ROBERT MATTERN, individually, and J. | : |
| DOES 1-50, fictitious individuals, and ABC | : |
| ENTITIES 1-50, fictitious entities, | : |
| | : |
| Third-Party | : |
| Defendants. | : |

Defendant, John Seidel ("Seidel"), by way of answer to Mattern & Associates, LLC's ("Mattern's") first amended complaint, says:

1. The first sentence is admitted to the extent that it describes the relief plaintiff seeks; it is denied to the extent that plaintiff is entitled to the relief sought. The second and third sentences are admitted to the extent that plaintiff is reasserting causes of action and adding a cause of action; denied to the extent that plaintiff states viable causes of action. The fourth sentence does not contain any allegation of fact; therefore, no response is required or made.

**Parties**

2. Admitted.

3. This defendant has insufficient information or knowledge to form a belief as to what was "last known" to plaintiff.

1

## BACKGROUND FACTS

<u>Seidel's Employment with M&A</u>

4. Admitted that Seidel was employed by Mattern; denied that he was an independent contractor.

5. Admitted that Seidel became Vice President of Business Development; plaintiff is left to its proofs to identify alleged confidential information, customized techniques, trade secrets, and the names and addresses of Mattern's customers.

6. Admitted.

   a. The Operating Agreement speaks for itself.

   b. The Operating Agreement speaks for itself.

   c. The Operating Agreement speaks for itself.

   d. The Operating Agreement speaks for itself; denied that this forfeiture/penalty clause is enforceable.

7. These allegations call for legal conclusions; therefore no response is made.

8. Denied.

9. Admitted that emails were sent, which emails speak for themselves.

10. Admitted that emails were sent, which emails speak for themselves.

11. Denied. The emails speak for themselves.

12. Admitted that emails were sent, which emails speak for themselves.

13. Denied.

<u>Seidel's Alleged Misuse of M&A Funds & Resignation</u>

14. Denied that Seidel's performance was on a downward spiral. Admitted that Mattern set unreasonable and unattainable goals designed to cause Seidel to fail. Denied that Seidel was

"confronted" about "poor job performance." In addition, Mattern knew of, and acquiesced in, Seidel's occasional use of the company credit card to charge personal expenses, which Seidel always promptly reimbursed. Third-party defendant, Robert Mattern, engaged in the same behavior.

15. Denied.

16. Denied. Mattern wrongfully terminated Seidel's employment.

17. Denied that Seidel resigned. Seidel admits that to the extent he owes reimbursement to Mattern for personal expenses on the company credit card, he will pay them. However, Mattern owes Seidel commission compensation greatly in excess of any such reimbursement due to Mattern.

18. Denied.

19. Denied.

20. Denied.

Seidel's Alleged Continued Competition

21. Denied.

22. Denied.

23. Denied.

24. Denied.

25. Denied.

Seidel's Alleged Misappropriation of M&A Information

26. Denied that there is "valuable insider knowledge about M&A's business and its customers."

27. Denied that Seidel resigned from M&A. Admitted that Seidel made a copy of his laptop; denied that the information on it was confidential or competitively sensitive.

28. Admitted that Seidel returned the laptop and kept a copy of its contents; denied that there was "voluminous M&A proprietary information contained thereon."

29. Admitted that letters were sent by Mattern's counsel, which letters speak for themselves. Denied that Seidel possesses any trade secrets, databases, customer lists, etc., as listed in Mattern's complaint.

30. Admitted.

31. Admitted.

32. Denied.

33. Denied.

34. Denied.

## Count I

### Breach of Contract - Injunctive Relief

35. Defendant repeats its responses as set forth above.

36. The Operating Agreement speaks for itself.

37. Denied.

38. Denied.

39. Denied.

40. Denied.

41. Denied.

42. Denied.

43. Denied.

## Count II

## Breach of Contract - Damages

44. Defendant repeats its responses as set forth above.

45. Denied.

46. Denied.

47. Denied.

48. Denied.

49. Denied.

## Count III

## Breach of Fiduciary Duties

50. Defendant repeats its responses as set forth above.

51. These allegations call for legal conclusions; therefore no response is made.

52. Denied.

53. Denied.

## Count IV

## Misappropriation of Trade Secrets
*Delaware Uniform Trade Secrets Act*
*6 Del. C. 2001 et seq.*

54. Defendant repeats its responses as set forth above.

55. Denied.

56. Denied.

57. Denied.

58. Denied.

59. Denied.

60. Denied.

WHEREFORE, defendant requests entry of judgment in its favor, dismissing plaintiff's complaint with prejudice, and awarding him attorneys' fees and costs, and such other relief as the Court may deem appropriate.

## SEPARATE DEFENSES

1. The Complaint fails to state a claim upon which relief can be granted.

2. Plaintiff's claims are barred by its own unclean hands.

3. Plaintiff's claims are barred by waiver and estoppel.

4. At all times, defendant believed his actions to be proper.

5. At all times, defendant acted in good faith.

6. Plaintiff has not been damaged by any act of defendant.

7. Plaintiff has failed to mitigate its damages.

8. Defendant's actions were not outrageous or beyond the bounds of decency.

9. The defendant did not act with malice on any of the occasions described in the Complaint, and therefore, there is no basis for an award of punitive damages.

10. The Complaint is barred, in whole or part, by the running of the applicable statute(s) of limitations.

11. Plaintiff's claim for $150,000 in "liquidated damages" is an unenforceable penalty clause.

12. Defendant's employment is not competitive with plaintiff's business.

13. Plaintiff does not have a legitimate basis to claim proprietary information, as it took few or no steps to protect any such alleged information.

14. The non-compete clause is unenforceable for lack of consideration.

15. The non-compete clause is unenforceable as a restraint on trade.

16. The non-compete clause is unenforceable as it is overly broad in scope.

17. Plaintiff acquiesced in the occasional use of its company credit for personal expenses so long as they were reimbursed. Plaintiff Mattern has engaged in the same behavior, and has frequently utilized company funds to pay his own personal expenses.

## COUNTERCLAIM

### COUNT I

Defendant-Counterclaimant, John Seidel ("Seidel"), by way of counterclaim against plaintiff, Mattern & Associates, LLC ("Mattern"), says:

1. Mattern is a Pennsylvania Limited Liability Company, with an office located at 4 Pennrose Talley, Boothwyn, Delaware County, Pennsylvania. (Section 1.7 of the LLC Agreement)

2. Seidel is a Member of Mattern, possessing a Three Percent (3%) ownership interest in Mattern. (Schedule 3.1 of the LLC Agreement)

3. Mattern's Limited Liability Company Agreement ("the Agreement") provides that it shall be construed and enforced in accordance with, and governed by, the laws of the Commonwealth of Pennsylvania. (Section 15.5 of the Agreement)

4. Mattern compensated Seidel, by the payment of commissions and certain guaranteed payments under the Agreement, which are wages as defined under Pennsylvania law. 43 P.S. § 260.2a.

5. Pennsylvania law provides that an employee who had not been paid wages due may recover them in a civil action, and that the employer shall be liable for the employee's attorneys' fees and costs in the action. 43 P.S. § 260.9a.

7

6. Pennsylvania law further provides for the collection of twenty-five percent (25%) liquidated damages where the employer has no good faith defense to the failure to pay wages. 43 P.S. § 260.10. Mattern has no good faith defense.

7. Mattern owes Seidel over $100,000 in commissions on sales generated by Seidel. Mattern also may owe Seidel unpaid guaranteed payments.

8. Mattern has failed, neglected, and/or refused to pay wages due and owing to Seidel.

9. The foregoing failure to compensate Seidel is in violation of the applicable wage and hour laws of the Commonwealth of Pennsylvania.

10. In the alternative to the foregoing, and only because plaintiff has denied that the Pennsylvania Wage and Hour law applies to it, the foregoing actions by plaintiff are in violation of the Delaware Wage and Hour Laws, 19 Del. C. § 1101, et seq.

11. Pursuant to the Delaware Wage and Hour Laws, plaintiff is liable to defendant for unpaid wages, liquidated damages, and attorneys' fees and costs.

WHEREFORE, Seidel demands judgment against Mattern for the payment of wages due to him, plus interest, liquidated damages pursuant to law, attorneys' fees and costs, and such other relief as the Court may deem appropriate.

## COUNT II

1. Seidel incorporates the preceding allegations by reference.

2. Section 7.4 provides an option to purchase a Member's ownership interest upon the occurrence of certain events, specifically, "(1) the Member's decision to voluntarily terminate his participation as such, (2) the Company's decision to terminate the Member's position for Cause, or (3) in the case of JOHN SEIDEL, the Company's decision to terminate his position, with or without cause, at any time on or before February 1, 2004." However, the purchase price is

limited to $1.00 per Unit in these circumstances, rather than the actual value of the Units as set forth in Section 7.7 of the Agreement and Schedule 7.7 attached to the Agreement.

3. Mattern has demanded the purchase of Seidel's Units for $1.00 per Unit, purportedly pursuant to this Section of the Agreement.

4. Mattern's demand is falsely premised upon the alleged resignation by Seidel. In reality, Seidel was terminated without cause on April 11, 2005.

5. Equity demands that Mattern be compelled to purchase Seidel's Units in accordance with Section 7.7 and Schedule 7.7 of the Agreement.

6. Among other things, Mattern's failure to purchase Seidel's Units renders the non-compete provision in the Agreement completely unenforceable, as its terms render it perpetual until a Member's Units are sold.

WHEREFORE, Seidel demands judgment against Mattern compelling the valuation of his Units in accordance with the terms of the Agreement, and payment to him that value, along with any other appropriate damages, plus interest, attorneys' fees and costs, and such other relief as the Court may deem appropriate.

## THIRD-PARTY COMPLAINT

Defendant-Third Party Plaintiff, John Seidel ("Seidel"), by way of third party complaint against third party defendant, Robert Mattern, says:

## COUNT I

1. Seidel incorporates the preceding allegations by reference.

2. Pursuant to Pennsylvania law, Robert Mattern is individually and personally liable to Seidel for the unpaid wages described herein.

9

3. In the alternative to the foregoing, and only because plaintiff has denied that the Pennsylvania Wage and Hour law applies to it, the foregoing actions by plaintiff are in violation of the Delaware Wage and Hour Laws, 19 Del. C. § 1101, et seq.

4. Robert Mattern knowingly permitted Mattern and Associates to violate the Delaware Wage and Hour Laws, he is deemed to be an employer of defendant and is liable to defendant for unpaid wages, liquidated damages, and attorneys' fees and costs.

WHEREFORE, Seidel demands judgment against Robert Mattern for the payment of wages due to him, plus interest, liquidated damages pursuant to law, attorneys' fees and costs, and such other relief as the Court may deem appropriate.

By:
s/Paul A. Wernle, Jr.
Paul A. Wernle, Jr. (No. 2461)
92 Reads Way
Suite 106
New Castle, Delaware 19720-1631
(302) 221-3342

s/Robert J. Hagerty
Robert J. Hagerty (Admitted *pro hac vice*)
Capehart & Scatchard
8000 Midlantic Drive
Suite 300
Mount Laurel, New Jersey 08054
(856) 914-2076