# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MATTERN & ASSOCIATES, L.L.C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civ. No. 06-036-SLR |
| | ) |
| JOHN SEIDEL, | ) |
| | ) |
| Defendant and Third Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ROBERT MATTERN, et al., | ) |
| | ) |
| Third Party Defendants. | ) |

**JURY INSTRUCTIONS**

Dated:
October 20, 2008

## INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. I will start by explaining your duties and the general rules that apply in every civil case. I will explain some rules that you must use in evaluating particular testimony and evidence. I will explain the positions of the parties and the law you will apply in this case. Last, I will explain the rules that you must follow during your deliberations in the jury room.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the interrogatories, or questions, that you must answer to decide this case.

## JURORS' DUTIES

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide which party should prevail on the issues presented. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

## EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in the courtroom. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way. The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition testimony that has been played or read to you), the exhibits that I allowed into evidence, and any facts that the parties agreed to by stipulation.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. None of my comments or questions are evidence. The notes taken by any juror are not evidence.

Certain charts and graphics may have been used to illustrate testimony from witnesses. Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence even if they refer to, identify, or summarize evidence.

During the trial I may not have let you hear the answers to some of the questions that the lawyers asked. I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I may have ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and

4

you are bound by your oath not to let them influence your decision in any way.  Make your decision based only on the evidence, as I have defined it here, and nothing else.

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

Some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is simply evidence like the testimony of any eyewitness which, if you believe it, directly proves a fact. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weights that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

## CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

## USE OF NOTES

You may use notes taken during the trial to assist your memory.
Remember that your notes are for your personal use. They may not be given or
read to anyone else. Do not use your notes, or any other juror's notes, as
authority to persuade fellow jurors. Your notes are not evidence, and they are by
no means a complete outline of the proceedings or a list of the highlights of the
trial. Some testimony that is considered unimportant at the time presented and,
thus, not written down, may take on greater importance later on in the trial in light
of all the evidence presented. Your notes are valuable only as a way to refresh
your memory. Your memory is what you should be relying on when it comes
time to deliberate and render your verdict in this case.

## CREDIBILITY OF WITNESSES

You, the jurors, are the sole judges of the credibility, or the believability, of the witnesses you have seen during the trial and the weight their testimony deserves.

You should carefully scrutinize all the testimony each witness has given and every matter of evidence that tends to show whether he or she is worthy of belief. Consider each witness's intelligence, motive, and state of mind, as well as his or her demeanor while on the stand. Consider the witness's ability to observe the matters as to which he or she has testified and whether he or she impresses you as having an accurate recollectionof these matters. Consider also any relation each witness may bear to each side of the case, the manner in which each witness might be affected by the verdict, the interest any witness may have in the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Discrepancies in the testimony of different witnesses may, or may not, cause you to discredit such testimony. Two or more persons witnessing an incident or transaction may see or hear it differently. Likewise, in determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different, or inconsistent, from the testimony that he or she gave during the trial. It is the province of the jury to determine whether a false statement or a prior inconsistent statement discredits the witness's testimony.

You should remember that a simple mistake by a witness does not mean that the witness was not telling the truth. People may tend to forget some things or remember

other things inaccurately. If a witness has made a misstatement, you must consider

whether it was simply an innocent lapse of memory or an intentional falsehood, and that

may depend upon whether it concerns an important fact or an unimportant detail.

## NUMBER OF WITNESSES

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.  Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

## DEPOSITION TESTIMONY

During the trial, certain testimony was presented to you through depositions that were read into evidence or electronically recorded. This testimony is entitled to the same consideration you would give it had the witness personally appeared in court. Like the testimony of a live witness, the statements made in a deposition are made under oath and are considered evidence that may be used to prove particular facts.

## THE PARTIES AND THEIR CONTENTIONS

Plaintiff is Mattern & Associates, L.L.C., which I will refer to as "M&A." M&A is a Pennsylvania limited liability corporation and, at all times relevant to this action, had its principal place of business at 2036 Foulk Road, Wilmington, Delaware. Robert Mattern is the principal and majority shareholder of M&A. Defendant John Seidel was an employee at M&A with the title of Vice President of Business Development. At the time of his departure from M&A on April 8, 2005, Seidel owned 3% of the shares of M&A.

In this case, M&A contends that:

1. Seidel breached his contractual obligations to M&A as contained in the Limited Liability Company Agreement.

2. Seidel breached his fiduciary duties to M&A; and

3. Seidel misappropriated trade secrets and confidential and proprietary information.

Seidel denies the above claims and, in turn, contends that:

1. M&A and Robert Mattern violated Pennsylvania's Wage Payment and Collection law by failing to pay Seidel wages and commissions; and

2. M&A should pay Seidel the actual value of stock shares rather than the amount provided for in the Limited Liability Company Agreement.

M&A and Robert Mattern deny Seidel's claims.

13

## ALL PERSONS AND ORGANIZATIONS ARE EQUAL BEFORE THE LAW

In your deliberations, you must not consider the fact that plaintiff is a corporation while defendant is an individual. A corporation is entitled to the same fair trial as a private individual. All persons, including corporations, stand equal before the law and are to be dealt with as equals in a court of justice. This means you should not favor defendant over plaintiff. The status of plaintiff and defendant as individuals or corporations should not affect your decisions in any way.

## BURDEN OF PROOF

This is a civil case. M&A is the party who brought this lawsuit. Seidel countersued M&A and Robert Mattern. Each party has the burden of proving its case by what is called the preponderance of the evidence. That means that each party has to prove to you, in light of all the evidence, that what it claims is more likely so than not so. To say it differently, if you were to put the evidence favorable to each party on opposite sides of the scales, the prevailing party would have to make the scales tip somewhat on its side. If a party fails to meet this burden, the verdict must be for the other party on that issue. If you find, after considering all the evidence, that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies only to criminal cases. It does not apply in civil cases such as this. So you should put it out of your mind.

## BREACH OF CONTRACT - GENERALLY

M&A has brought a breach of contract claim against Seidel and Seidel has brought a breach of contract claim for commissions against M&A. Each party must prove its breach of contract claim by a preponderance of the evidence. .

A contract is a legally enforceable agreement between two or more competent parties who have each promised to do, or refrain from doing, some lawful act. Whether oral or written, a contract is enforceable if its terms clearly express what each party intended and expected. If the terms of the agreement are not definite and certain, any uncertainty may be clarified by examining the circumstances surrounding the bargain. The basic elements that must be present to form a contract, each of which must be proven by a preponderance of the evidence, are offer, acceptance, and consideration.

If you find that a contract existed between the parties, you must determine whether the contract was breached.

A breach of contract occurs when a party to the contract fails to perform any contractual duty of immediate performance or violates an obligation, engagement, or duty, and that breach is material. A breach does not have to be defined in a contract.

Not every nonperformance, however, is to be considered a breach of the contract. If you find that the nonperformance was immaterial and, thus, if the contract was substantially performed, you must also find that a breach of the contract has not occurred.

## MATERIAL BREACH

You have been instructed that you must determine there has been a material breach of the contract.

A "material breach" is one that substantially defeats the purpose of the contract, or relates to an essential element of the contract and deprives the injured party of a benefit that he reasonably expected.

Where there has been a material breach of contract, substantial performance of the contract has not been rendered. To determine whether a breach is material, the trier of fact should consider: (1) the extent to which an injured party, absent the breach, would obtain a substantial benefit from the contract; and (2) the adequacy of compensation in damages.

Both parties in this case have alleged that the other materially breached the contract. If you find that both parties materially breached the contract, then neither may recover, unless one has benefitted to the detriment of the other and, if so, you may award damages so as to compensate the party detrimented.

## BREACH OF FIDUCIARY DUTIES

M&A has brought a claim of breach of fiduciary duty against Seidel.  An employee owes a duty of loyalty to his employer and, in all matters affecting the subject of his employment, he must act with the utmost good faith in the furtherance and advancement of the interests of his employer.

An employee, as an agent of the employer, is required to act with the utmost good faith in carrying out the interests of his principal, the employer.  The agent violates that duty when he has a personal interest in the dealings that might affect his judgment or fails to act only for the principal's benefit.

To prove that Seidel breached his fiduciary duty to M&A, M&A must show the following elements by a preponderance of the evidence:

1. Seidel negligently or intentionally failed to act with loyalty and in good faith and solely for the benefit of M&A in all matters for which he was employed;

2. M&A suffered injury; and

3. Seidel's failure to act solely for M&A's benefit was a real factor in bringing about M&A's injuries.

## TRADE SECRETS - GENERALLY

M&A has brought a claim against Seidel alleging violations of the Delaware Uniform Trade Secrets Act. As I will describe for you below, this Act permits M&A to recover damages against Seidel if M&A shows that Seidel misappropriated M&A's trade secrets through improper means. M&A must show, by a preponderance of the evidence, that:

1. M&A owned a trade secret(s);

2. Seidel misappropriated the secret information; and

3. M&A has been harmed as a direct result of the misappropriation.

I will now instruct you on the meanings of these three elements.

## TRADE SECRET DEFINED

You must first find that M&A had a trade secret or trade secrets. A trade secret is defined as information, including a formula, drawing, pattern, compilation including a customer list, program, device, method, technique or process that:

1. derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

2. is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

In determining whether M&A has proven, by a preponderance of the evidence, that it possessed specific, identifiable trade secrets, you may consider the following factors:

1. the extent to which the information was known outside of M&A's business;

2. the extent to which it was known by employees and others involved in M&A's business;

3. the extent of measures taken by M&A to guard the secrecy of the information;

4. the value of the information to M&A and its competitors;

5. the amount of effort or money expended in developing the information; and

6. the ease or difficulty with which the information could be properly acquired or duplicated by others.

20

## SECRECY REQUIREMENT

To qualify as a trade secret, the information must in fact be secret. A substantial element of secrecy must exist so that, except by the use of improper means, it would be difficult or costly to acquire the information. Thus, information that is readily ascertainable, because it is easily available in trade journals, reference books, or other published materials, or from a brief and inexpensive examination of a publicly marketed product, cannot be a trade secret.

However, a trade secret may comprise a combination of information that is generally known or readily ascertainable, if the combination itself qualifies under the standards I have described. A compilation of otherwise public information in a unique and confidential format itself may constitute a trade secret. Also, information can qualify as a trade secret even though it may be independently discovered through reverse engineering--that is starting with a known product and working backward by examining or testing it to find the process by which it was manufactured--if that effort is lengthy or expensive.

A trade secret does not have to be absolutely secret. It can be disclosed to employees involved in its use, or to unrelated parties under circumstances that tend to keep it from becoming generally known. However, a trade secret owner must make reasonable efforts to keep the information secret, as I will explain to you.

21

## VALUE

As I have said, a trade secret must have value that results from its secrecy. In other words, a trade secret must be of sufficient value to provide an actual or potential economic advantage over others who do not possess the information. The advantage, however, need not be great. It is sufficient if the secret provides an advantage that is more than trivial. Although a trade secret can consist of a patentable invention, there is no requirement that the trade secret meet the standard of inventiveness, applicable under federal patent law.

## REASONABLE EFFORTS TO PROTECT SECRECY

One of the elements of a trade secret is that its owner must have made reasonable efforts to keep it secret. A trade secret owner does not have to undertake extreme and unduly expensive measures; however, its efforts must represent a reasonable attempt to limit exposure of the information to those who have reason to know it and who are made aware of its confidential nature. In assessing reasonableness, you must consider the value of the information, the risk of unintended disclosure, and the cost or inconvenience of particular measures.

## MISAPPROPRIATION

If you find that M&A has proved the existence of trade secret information as I have defined it for you, then you must decide whether Seidel has misappropriated any of this information.

Someone can misappropriate the trade secret of another in either of two ways: (1) by acquiring, by improper means, information that he knows or should know is another's trade secret; or (2) by using or disclosing, without consent, information that he knows or should know is another's trade secret.

As to the first kind of misappropriation, "improper means" include theft, fraud, unauthorized interception of communications, inducement of or knowing participation in a breach of a duty of confidence, and other means either wrongful in themselves or wrongful under the circumstances of this case.

A "duty of confidence" is owed by a person to whom a trade secret is disclosed if the recipient either: (1) made an express promise, orally or in writing, to maintain secrecy; or (2) received the trade secret under circumstances that show the recipient knew or should have known that the disclosure was intended to be confidential. Sometimes the nature of the relationship between the parties is sufficient to establish the necessary understanding of confidentiality.

The second kind of misappropriation consists of use or disclosure of the trade secret without consent, when the defendant knew or should have known that the information was a trade secret. The defendant's knowledge can be proved in one of several ways, by showing that he knew or had reason to know that he: (1) acquired the trade secret under a duty of confidence; (2) acquired the trade secret by improper

means; (3) acquired the trade secret from another person who had acquired it by improper means or breached a duty of confidence; or (4) acquired the trade secret through an accident or mistake (unless the accident or mistake constituted a failure by the owner to make reasonable efforts to maintain secrecy).

To show that a defendant has "used" a trade secret does not require that he has employed it in the same way as the owner. Any exploitation of the information that is likely to result in injury to the owner is sufficient, including marketing goods or products that embody the trade secret, employing the trade secret in manufacturing, relying on the trade secret to assist or accelerate research or development, or soliciting customers through use of trade secret information. Also, the unauthorized use need not extend to every aspect or feature of the trade secret at issue; use of any portion of the trade secret is sufficient. The defendant may also be liable if he uses the trade secret together with independently created improvements or modifications, if the result is substantially derived from the trade secret.

## WILLFULNESS

If you decide that Seidel has misappropriated a trade secret of M&A, you will be asked on your verdict form to indicate whether such misappropriation was willful and malicious. An act is done "willfully" if it is voluntary and intentional, rather than by mistake or accident. An act is done "maliciously" if prompted or accompanied by such gross indifference to the rights of others as will amount to a willful act without just cause or excuse.

## PENNSYLVANIA'S WAGE PAYMENT AND COLLECTION LAW

Seidel has brought a counterclaim against M&A and a third-party claim against Robert Mattern, individually, for violating Pennsylvania's Wage Payment and Collection Law. The Wage Payment and Collection Law requires employers to pay a former employee his wages or cornpensation, including commissions, earned at the time of separation. This law does not create a right to compensation. Instead, it only provides a remedy if an employer breaches a contractual obligation to pay earned wages or commissions. Therefore, the contract between the parties, written or oral, governs in determining whether specific wages or commissions have been earned.

## DAMAGES – GENERALLY

I will now instruct you on the issue of damages.

If you find that Seidel is liable to M&A, then you must find

an amount of money damages you believe will fairly and adequately compensate M&A

for all the financial injury that it has sustained as a result of Seidel's conduct.

## DAMAGES - BREACH OF CONTRACT

Where one party to a contract breaches that contract, the other party may recover for those injuries that have been proved to you with reasonable certainty. Generally, the measure of damages for a breach of contract claim is the sum that will compensate the non-breaching party for the loss sustained. If you find that Seidel breached the contract, you must then decide what amount of money will compensate M&A for those injuries that were a direct and foreseeable result of the breach, and that the parties could have reasonably foreseen with certainty at the time they made the contract.

## LIQUIDATED DAMAGES

Mattern contends that the $150,000 damages in the LLC are liquidated damages. Seidel maintains it is a penalty.

Liquidated damages are the parties' best guess of the amount of the injury that the nonbreaching party would sustain in a contractual breach, or a way of rendering certain and definite damages that would otherwise be uncertain or not easily susceptible of proof.

Liquidated damages can be characterized as a measure of foreseeable business losses or as damages for loss of goodwill, losses that are not quantifiable.

If a liquidated damages clause represents a good faith and reasonable forecast of anticipated damages for breach, which damages are otherwise difficult to prove with certainty, then the clause is enforceable.

A penalty is a clause which is imposed as a punishment to secure compliance and has no relationship to potential damages.

## DAMAGES – BREACH OF FIDUCIARY DUTY

If you find that Seidel breached his fiduciary duty to M&A, then M&A is entitled to be fairly and adequately compensated for all financial losses it suffered as a proximate result of Seidel's conduct. In addition, if you find that Seidel failed to act in the utmost good faith, M&A is entitled to recover any compensation and commission it paid Seidel from the time Seidel first failed to act in good faith until their relationship ended.

## DAMAGES – TRADE SECRETS

If you determine that M&A has established that Seidel violated the Delaware Uniform Trade Secrets Act, you must then decide the amount of damages to be awarded to M&A to compensate it for the misappropriation.

You may award M&A damages in an amount that represents either M&A's actual loss or the benefit to Seidel; or you may award M&A its actual loss plus the benefit to Seidel to the extent that such benefit is not already taken into account in computing the actual loss. In lieu of actual loss or unjust enrichment, you may choose to award to M&A reasonable royalty damages. A reasonable royalty is the amount that M&A would have agreed to sell, and Seidel's potential employers would have agreed to purchase, the body of the trade secrets at issue in this case, in a hypothetical arms-length transaction at the time of the theft.

## PUNITIVE DAMAGES – GENERALLY

If you find that Seidel's conduct in connection with M&A's claim for misappropriation of trade secrets was outrageous, you may award punitive damages to punish Seidel for his conduct and to deter Seidel and others from committing similar acts. If you find that Seidel did not engage in misappropriation of trade secrets, then you are not permitted to award punitive damages.

Conduct is outrageous when it is malicious, wanton, willful, or oppressive, or shows reckless indifference to the interests of others.

## PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW

If you find in favor of Seidel on his counterclaim or third-party claim under the Pennsylvania Wage Payment and Collection Law, you may consider whether M&A and Robert Mattern, individually, has a good faith basis to dispute or contest his wage claim. If you find that M&A had a good faith basis to dispute or contest his wage claim, then you cannot award Seidel any damages other than his actual losses for the breach of the obligation to pay the wages. If you find that M&A or Robert Mattern did not have a good faith basis to dispute Seidel's wage claim, then you may award Seidel an additional award of damages in an amount equal to twenty-five percent (25%) of the total amount of wages due, or five hundred dollars ($500), whichever is greater.

## DELIBERATION AND VERDICT
### INTRODUCTION

Let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper and put the note in one of the envelopes provided; then give the envelope to the jury officer. The officer will give the envelope to me, and I will respond to your note as soon as I can. I will have to talk to the lawyers about what you have asked, so it may take me some time to get back to you. Any questions or messages normally should be written and signed by your foreperson, who by custom of this Court is the juror seated in the first seat, first row.

One more thing about messages. Do not ever write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 5-3, or whatever your vote happens to be. That should stay secret until you are finished.

## UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are judges – judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you. The verdict form asks you a series of questions about the parties' claims. Unless you are directed otherwise in the form of the verdict, you must answer all of the questions posed, and you all must agree on each answer. When you have reached a unanimous agreement as to your verdict, you will return your verdict to the courtroom deputy.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner what verdict I think you should find. What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

## DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach a unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences. Do not hesitate to change your mind if you are convinced that other jurors are right and your original position was wrong. But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that – your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

If any member of the jury took notes, let me remind you that notes are not entitled to any greater weight than the memory or impression of each juror as to what the testimony may have been. Whether you took notes or not, each of you must form and express your own opinion as to the facts of the case.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

We generally end our business day at 4:30 p.m. If we do not hear from you by 4:30, I will be sending you a note to see whether you are close enough to a verdict to want to deliberate after 4:30 or whether you are going to recess for the evening and

37

resume your deliberations on the next business day. You will need to respond in writing to that question.

I am going to remind you now, if you go home this evening and resume your deliberations on the next business day, you are not to talk about the case among yourselves or with anyone else during the evening recess. You may talk about the case only while you are in the jury room and everyone on the jury is present. Unless I hear from you that you have a different schedule in mind, I will expect you all to come back the next business day at 9:30. You are not to start deliberating until you are all present in the jury room and participating together.

Because the lawyers have to make themselves available to respond to questions or receive the verdict, I generally give them between 12:30 and 1:30 to step away from the phone. So whenever you are deliberating over the lunch hour, let me remind you, if you ask a question between 12:30 and 1:30, you probably will not get an answer right away because we are all going to be stepping away from our phones at that time.

## COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier. Nothing that I

have said or done during this trial was meant to influence your decision in any way.

You must decide the case yourselves based on the evidence presented.